1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

8

9   GERALD ALAN INMAN AND ROBIN
    COLETTE INMAN,                                Case No.: [Number]

10              Plaintiffs,

11         v.                                     COMPLAINT

12   U.S. BANK, N.A., AS THE TRUSTEE,            [JURY DEMAND]
     SUCCESSOR TRUSTEE TO BANK OF
13   AMERICA, N.A. AS SUCCESSOR TO
     LASALLE BANK, N.A , AS TRUSTEE, FOR
14   MERRILL LYNCH FIRST FRANKLIN
     MORTGAGE LOAN TRUST, MORTGAGE
15   LOAN ASSET-BACKED CERTIFICATES,
     SERIES 2007-3, NATIONSTAR MORTGAGE,
16   LLC,

              Defendants.

17

18        COMES NOW, Gerald Alan Inman and Robin Colette Inman, (hereinafter "Plaintiffs"

19   or "Inmans") by and through the undersigned counsel, hereby bring this action for damages

20   for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"),

21   the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–17 ("RESPA"), the Truth in

22   Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"), the Washington State Consumer Protection

23   Act, RCW 19.86 et seq. ("WCPA"),  the Washington State Consumer Loan Act, RCW 31.04

24   et seq. ("WCLA"), for Breach of Contract, and for Negligent Misrepresentation against

25   Defendants US Bank, N.A. as the Trustee, Successor Trustee to Bank of America, N.A. as

26   Successor to LaSalle Bank, N.A., as Trustee, for Merrill Lynch First Franklin Mortgage Loan

COMPLAINT - 1

Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-for Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-3, Nationstar Mortgage, LLC d/b/a Mr. Cooper All of the claims stated herein stem from the wrongful servicing, debt collection, and loss of mitigation activities related to the Plaintiffs' loan.

## I.   <u>INTRODUCTION</u>

1.      Plaintiffs Gerald and Robin Inman did everything they were told to do. After successfully completing a six-year Chapter 13 bankruptcy and receiving a discharge, they embarked upon the fresh start the Bankruptcy Code is designed to provide. They were willing and able to timely pay all of their remaining debts, including the mortgage loan owed to Defendant US Bank and serviced by Defendant Nationstar, and made every reasonable effort to do so. Unfortunately, it seems, Nationstar had other ideas.

2.      Immediately upon receiving their discharge, Plaintiffs began receiving confusing, deceptive, inconsistent, and incorrect mortgage statements from Nationstar. One-month Nationstar would insist that Plaintiffs only owed them a few hundred dollars on the loan; a few months later, Nationstar would insist that they owed nearly ten thousand dollars due in a couple of weeks. The statements that Nationstar provided them were filled with dozens of mystery transactions that bore no relation to anything they ever owed or had paid. Thoroughly confused, even after speaking personally with Nationstar representatives, they timely paid every sum Nationstar directed them to pay, either through direct communication or via the notices Nationstar had transmitted to the bankruptcy court in accordance with federal law. It was not until the Department of Veterans Affairs denied their loan application several times that they appreciated the extent of Nationstar's incompetence, and the fact that Nationstar's multiple errors would cost them a valuable benefit that they had earned through their service to this country.

COMPLAINT - 2

**Henry & DeGraaff, P.S.**
787 Maynard Ave. S
Seattle, Washington  98104
telephone (206) 330-0595
fax (206) 400-7609

## II.   JURISDICTION AND VENUE

3.      This action arises under the FDCPA, RESPA, WCPA and Breach of Contract. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692k(d), 12 U.S.C. § 2605 and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, as each defendant conducts business in this District and a substantial portion of the events or omissions giving rise to the claims occurred within this District.

## III.   PARTIES

5.      Plaintiffs Gerald Inman and Robin Inman are natural persons who resides at 4303 57th Street Court E, Tacoma, Wash. (the "Property"). The Property is the Inmans' primary residence.

6.      Plaintiffs are "consumers" as this term is defined by the Washington State Collection Agency Act, of the Revised Code of Washington Ch. 19.86, because Plaintiffs are individuals with consumer debt.

7.      Plaintiffs are also "persons" as defined by the Washington Consumer Loan Act, Revised Code of Washington 31.04 *et seq.*  ("WCLA"), because Plaintiffs are individuals.

8.      Defendant US Bank National Association ("US Bank") is a federally insured banking institution and Delaware corporation with its principal place of business in Minneapolis, Minnesota.

9.      US Bank also regularly conducts and transacts business in the state of Washington. US Bank is vicariously liable for the actions of Nationstar Mortgage, LLC d/b/a Mr. Cooper in this matter. At all times relevant to the action, Defendant US Bank has been a National Association which with its headquarters in Minneapolis, Minnesota. U.S. Bank may

COMPLAINT - 3

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE. S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

be served with process through its registered agent, CT Corporation System, 711 Capital Way S, Ste 204, Olympia, WA 98501.

10.   US Bank, N.A., as the Trustee, Successor Trustee to Bank of America, N.A. as Successor to LaSalle Bank, N.A., as Trustee, for Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-3, which purports to be the owner of the mortgage loan at issue that the Inmans obtained in March 2007 ("the Loan") and which is secured by the Inmans' Property.

11.   US Bank, N.A. is responsible for the retention of Nationstar as a servicer of the Loan. US Bank confers complete authority and discretion upon these defendants to service the Loan and to perform mitigation services.

12.   At all times relevant to the action, Nationstar Mortgage, LLC d/b/a Mr. Cooper is the present servicer of the Loan. Nationstar Mortgage, LLC is an indirect, wholly-owned subsidiary of a publicly-traded company, Mr. Cooper Group Inc. ("Nationstar) (formerly known as WMIH Corp.), a Delaware corporation with its principal place of business in Coppell, Texas. The limited liability company, Nationstar, has two members: Nationstar Sub 1 LLC (with 99 percent ownership) and Nationstar Sub 2 LLC (with 1 percent ownership). Both members are wholly owned by Nationstar Mortgage Holdings, Inc., which is incorporated in Delaware with principal place of business in Texas. Nationstar is a citizen of Delaware and Texas. 28 U.S.C. § 1332(c)(1).

13.   At all times relevant hereto and in all matters alleged herein, Nationstar has acted as agent for and on behalf of Defendant US Bank, its principal. All the actions taken by Nationstar as alleged in this matter were taken under the supervision and/or direction of US Bank.

14.   Defendant Nationstar acts as a debt collector as defined by 15 U.S.C. § 1692a(6) of the FDCPA, because they regularly use the mails and/or the telephone in their

COMPLAINT - 4

business, the principal purpose of which is to collect, or attempt to collect, directly or indirectly, delinquent consumer debts.

15.     Defendant Nationstar operates a nationwide debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the state of Washington via collection letters, phone calls, credit reports, and lawsuits.

16.     Defendant Nationstar obtained the servicing rights to this debt after it was already in default and at that time started soliciting payment from the Plaintiffs and collecting on the debt. Thus, Defendant Nationstar was acting as a debt collector, as that term is defined in the FDCPA in their attempts to collect a debt from the Plaintiffs.

17.     Defendant Nationstar attempted to collect a "debt" from the Plaintiff, as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

Defendant Nationstar is also a "licensee" under the WCLA because it has been issued a "license" to service residential mortgage loans on behalf of the lender or investor pursuant to the WCLA, Revised Code of Washington 31.04 *et seq.*

18.     None of the Defendants were involved with the Plaintiffs when they obtained the Loan originally in 2007. None of them has explained how or provided complete proof of the transfer of the Loan from the original lender, First Franklin Financial Corp., to the securitized trust. Yet all the Defendants are participating in some or all aspects of debt collection and mortgage servicing, as well as other real property secured by deeds of trust owned by other residents of Washington. All defendants have conducted business within the borders of the State of Washington, where their business practices have harmed the Plaintiffs and many others who are similarly situated.

19.     Defendants have used the mail, the telephone and the Internet to reach across state lines into Washington to conduct their business. Nationstar provides services and receives compensation for performance of these services but does not have a direct stake in the ownership or a security interest in the collateral used to secure the mortgage loans they

COMPLAINT - 5

service. By having no skin in the game whatsoever, Nationstar has not been willing to take the time to investigate or to otherwise address any concern that borrowers like the Plaintiffs have about the mortgage loan.

### IV.   FACTUAL ALLEGATIONS

20.     On March 21, 2007, Plaintiffs obtained a loan ("Subject Debt" or "Subject Loan") from First Franklin Financial Corp secured by a mortgage on the property located at 4303 57th Street, Ct E, Tacoma, Wash. 98443 ("Property") that was eventually assigned to Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-3 with US Bank, N.A., as the Trustee, Successor Trustee to Bank of America, N.A. as Successor to LaSalle Bank, N.A. Attached hereto as **Exhibit A** is a true copy of the deed of trust adjustable rate note and relevant assignments.

21.     In 2008, Plaintiff Robin Inman injured her left ankle in a car accident that caused her to miss seven months of work due to complications from a surgery related to her injury.

22.     After using up all their savings and other resources and trying unsuccessfully to obtain a loan modification from Bank of America, who was their prior loan servicer.

23.     Plaintiff Gerald Inman filed a Chapter 7 bankruptcy under case number 13-44431-PBD, on July 3, 2013 in the Western District of Washington at Tacoma (the "Chapter 7 Bankruptcy case"), and a discharge was granted for him and his marital community on October 8, 2013.

24.     With few options, on December 30, 2013, Plaintiff Robin Inman filed the Chapter 13 bankruptcy case under case number 13-47844-BDL in the Western District of Washington at Tacoma (the "Chapter 13 Bankruptcy case") to cure all pre-petition defaults on the Subject Loan. At that time, Nationstar was the servicer of the Subject Loan. Attached hereto as **Exhibit B** is a true copy of the Notice of the § 341 notice of bankruptcy filing.

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE. S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

25.     The Subject Loan was duly disclosed on Schedule D of Plaintiff Robin Inman's bankruptcy petition as a secured creditor as a result of the deed of trust encumbering the subject property. Attached hereto as **Exhibit C** is a true copy of Schedule D of the Plaintiff Robin Collette Inman's bankruptcy petition.

26.     Also, on April 10, 2014 Plaintiff Robin Colette Inman filed her third amended Chapter 13 Plan ("Plaintiff's Plan") with the Bankruptcy Court, and it was confirmed on April 25, 2014. Attached hereto as **Exhibit D** is a true copy of Plaintiff's third amended Chapter 13 Plan filed with the Bankruptcy Court.

27.     Plaintiff's Plan, in pertinent part, sought to cure the default on their Subject Loan in the amount of $16,000. *Id.*

28.     US Bank also filed a proof of claim in the bankruptcy case on April 1, 2014 claiming an arrearage of $25,866.58, which controlled the amount the Inmans were required to pay.

29.     Plaintiff Robin Inman made all of her payments as required in her confirmed Chapter 13 Plan to the Chapter 13 Trustee, which included the payments for the ongoing mortgage payments and for the mortgage arrears to US Bank/Nationstar provided for in Section III.C.2 of the Confirmed Chapter 13 Plan with the proof of claim pre-petition arrears of $25,866.58 controlling the payment to US Bank/Nationstar.

30.     While the Chapter 13 case was pending, under Section X.C. US Bank/Nationstar was required to file and serve on the Trustee, debtor and debtor's counsel a notice itemizing all fees, expenses or charge within 180 days after the date on which the fees, expenses or charges are incurred, per Fed. R. Bankr. P. 3002.1(c).

31.     US Bank/Nationstar also filed a notice of post-petition fees, expenses and charges on May 15, 2014, adding $750 to the loan for filing fees and court costs.

32.     On March 24, 2017, US Bank/Nationstar filed a Notice of Mortgage Payment Change with the court in accordance with Fed. R. Bankr. P. 3002.1 to change the monthly

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE.S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

principal and interest payment from $1,465.40 to $1,465.39 with escrow of $308.01 came to $1773.40 a month as of May 1, 2017.

33.     On May 24, 2018, US Bank/Nationstar filed another Notice of Mortgage Payment Change to change the monthly payment to $1,867.56 to account for an escrow increase to $402.17.

34.     According documents attached to the US Bank/Nationstar proof of claim, at the time of the bankruptcy filing, Nationstar assessed fees to the Subject Loan in the amount of $5,350.98, an Escrow Account Shortage or Deficiency Balance of $4,424.98, fees and posting costs of $926.00.

35.     Nationstar serviced the Subject Loan during the entire time the Chapter 13 was pending.

36.     On November 28, 2018, Chapter 13 Trustee Michael G. Malaier filed and served a Notice of Final Cure under Rule 3002.1 to Nationstar Mortgage, LLC for the Subject Loan. Attached hereto as **Exhibit E** is a true copy of the Notice of Final Cure.

37.     On December 18, 2018, in response to the bankruptcy court's notice to US Bank/Nationstar of a final cure payment, US Bank/Nationstar responded that "the debtor(s) are current with all post-petition payments consistent with 11 U.S.C. § 1322(b)(5), including all fees, charges, expenses, escrow, and costs," with the next post-petition payment due on January 1, 2019. Attached hereto as **Exhibit F** is a true copy of the Response to the Notice of Final Cure.

38.     On January 2, 2019, the Chapter 13 Trustee filed a notice of plan completion and the court issued an order of discharge under 11 U.S.C. § 1328 on January 3, 2019. *See* **Exhibit G and H** attached hereto are true and correct copies of the Letter re Plan completion and the Bankruptcy Order of Discharge.

39.     US Bank/Nationstar's December 18, 2018 Response to the Notice of Final Cure and the subsequent entry of the Plaintiff's Chapter 13 discharge on January 3, 2019

COMPLAINT - 8

caused the Plaintiffs to be contractually current as of that date (January 3, 2019, the date the Discharge was issued) pursuant to 11 U.S.C. § 524, Fed. R. Bankr. P. 3002.1, and the language of the Confirmed Plan. Any alleged post-petition bankruptcy default that did exist was discharged along with amounts claimed in the pre-petition in the Proof of Claim of US Bank/Nationstar (Claim 6). In essence, as of the plan completion and discharge (January 3, 2019), the Plaintiff was contractually current with Nationstar. *See* 11 U.S.C. § 524; Fed. R. Bankr. P. 3002.1; *United Student Aid Funds, Inc. vs. Espinosa*, 559 U.S. 260, 276 (2010) (specifying that party failing to oppose plan at appropriate time may not obtain post-judgment relief).

### A. Plaintiffs Received Confusing, Inconsistent, and Incorrect Information About Their Mortgage

40.     In late January of 2019, Plaintiffs sent Nationstar their scheduled February 2019 monthly mortgage payment in the amount of $1,867.56, which was the amount specified by Nationstar in its May 24, 2018 Notice of Mortgage Payment Change, and which the Plaintiffs believed to be the correct figure owed.

41.     Shortly thereafter, Plaintiffs received a mortgage statement from Nationstar dated January 18, 2019, with a due date of February 1, 2019. It stated that the amount due was only $246.04. Confused, Plaintiffs contacted Nationstar to inquire about the apparent mistake. Nationstar's representative told Plaintiffs that the statement was correct, and that they had overpaid. Plaintiffs then issued a stop payment order on the $1,867.56 check and sent in another one for $246.04.

42.     About a month later, Plaintiffs received a mortgage statement from Nationstar dated February 18, 2019, with a due date of March 1, 2019. This statement claimed that the amount due was $812.44. Plaintiffs again called Nationstar and were informed that the figure was correct. Plaintiffs subsequently transmitted a payment to Nationstar in the amount of $812.44 on or about March 4, 2019.

COMPLAINT - 9

Henry & DeGraaff, P.S.
787 Maynard Ave. S
Seattle, Washington  98104
telephone (206) 330-0595
fax (206) 400-7609

43.     A few weeks after that, Plaintiffs received a mortgage statement from Nationstar dated March 19, 2019, with a due date of April 1, 2019. This statement claimed that the amount due on the mortgage was $21.00. Accordingly, Plaintiffs transmitted a payment of $21.00 to Nationstar.

44.     In April 2019, Plaintiffs received a mortgage statement from Nationstar dated April 18, 2019, with a due date of May 1, 2019. The statement claimed that the amount due on the mortgage was *$9,316.80*, with no explanation offered as to why the amount was suddenly so high. Now thoroughly confused, Plaintiffs made a payment of $1,867.56, which they had believed was the correct monthly figure since exiting bankruptcy in early January.

45.     In May 2019, Plaintiffs received a mortgage statement from Nationstar dated May 20, 2019, with a due date of June 1, 2019. The statement claimed that the amount due on the mortgage was $7,470.24. Plaintiffs made a payment of $1,888.56.

46.     In June 2019, Plaintiffs received a mortgage statement from Nationstar dated June 18, 2019, with a due date of July 1, 2019. The statement claimed that the amount due on the mortgage was $7,470.24. Plaintiffs made a payment of $1,857.56.

47.     In July 2019, Plaintiffs received a certified letter from Nationstar dated July 8, 2019 stating that their loan was past due for the April 1, 2019 payment, and that their failure to make that and subsequent payments constituted a default under the terms and conditions of the loan.

48.     On July 11, 2019, Plaintiffs sent a letter to Nationstar asking a number of questions about their mortgage, including what had happened to the payments they had sent in and why their mortgage was inaccurately being reported as four months behind.

49.     A few days later, Plaintiffs received another certified letter from Nationstar dated July 17, 2019 stating that their loan was past due for the May 1, 2019 payment, and that their failure to make that and subsequent payments constituted a default under the terms and conditions of the loan.

COMPLAINT - 10

**HENRY & DeGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

50.     Also, in July 2019, Plaintiffs received a mortgage statement from Nationstar dated July 18, 2019, with a due date of August 1, 2019. The statement claimed that the amount due on the mortgage was $5,997.42, like the previous month. Plaintiffs again made a payment of $1,867.56.

51.     In August 2019, Plaintiffs received a letter from Nationstar dated August 6, responding to their correspondence of July 11. In the letter, Nationstar said that it required more time to prepare a response.

52.     On August 8, 2019, Plaintiffs sent Nationstar a letter that summarized the payments they had made in 2019, stated that they did not understand what they owed at that time, and noted that, in order to avoid confusion, they were sending in an additional check in the amount of $4,565.14, expressing their hope that it would cover any amounts still due between February and July 2019. In addition, they stated, they were transmitting an additional check for $1,890.24 for the payment due August 1, 2019.

**B.     Nationstar Repeatedly Failed to Accurately Account for Payments and Calculate the Amount Owed.**

53.     All of the mortgage statements that Nationstar transmitted to Plaintiffs between January and April 2020, included multiple significant errors, both in their assessment of the amount due and in the calculations used to arrive at that figure, and were replete with confusing, misleading, and obfuscatory statements and figures that made it impossible for a reasonable person to understand the true and actual status of the mortgage. To give a full and comprehensive accounting of these errors at this time would place an unacceptable strain upon this Court's time and docket; therefore, Plaintiffs here attempt to provide a representative sample of the errors that confounded them.

    a.     The statement of January 18, 2019 indicated that Plaintiffs' account held funds totaling $17,410.00, which it characterized as "partial payment[s]", which had not been applied to the loan. Nationstar had told the bankruptcy court that

COMPLAINT - 11

Plaintiffs' mortgage was current as of the date of discharge, so there should not have been any funds that were unapplied or in suspense at that time.

b.      The transaction logs included with each statement are entirely incomprehensible to a reasonable observer. They are filled with records of payments and partial payments followed by the immediate reversal of said payments, none of which bear any relation to any action Plaintiffs took on or near the recorded dates; positive and negative figures are listed seemingly at random, with no clear indication of the effect the recorded transactions had on the balance of the mortgage. For example, the statement of January 18, 2019 lists four transactions as having taken place on November 15, 2018:

| 11/15/2018 | Adjustment-Misc Suspense | $3,735.12 |
| 11/15/2018 | Adjustment-Misc Suspense | −$3,735.12 |
| 11/15/2018 | Adjustment-Misc Suspense | $3,735.12 |
| 11/15/2018 | Reversal-Partial Payment | $3,735.12 |

The figure $3,735.12 is listed four times, three positive and one negative. It does not bear any apparent relation to any figure ever paid by Plaintiffs; the so-called "partial payment" is far larger than any scheduled monthly payment the Plaintiffs have ever been obligated to pay; and there is no apparent reason why the "adjustment" should have been added, then subtracted, then added again, all on the same day. Moreover, it is not clear why transactions from November of 2018 should have appeared in a section labeled "Transaction Activity (01/20/2019 to 02/19/2019)."

c.      The statements of January 18 and February 19, 2019, state that the "Interest Rate (Until 05/01/2019)" is 7.99 percent. Then, on the statement of March 19. 2019, the "Interest Rate (Until 05/01/2019)" is suddenly given as 8.125 percent. No explanation is given for the discrepancy.

COMPLAINT - 12

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

d.      Several statements included an explanatory notice that said, "Partial Payment (Unapplied) refers to a payment less than your full monthly mortgage loan payment due that was received on your account. These funds are applied to, and held in, a separate non-interest-bearing account until the remaining funds are received to make a full monthly mortgage loan payment. In order to apply these funds to the mortgage loan you are required to send us the additional funds sufficient to equal a full monthly mortgage loan payment. The Partial Payment (Unapplied) balance represents the amount of funds being held in a non-interest-bearing account as of the date of this statement." Despite this, the statements of January 18 and February 19, 2019 list the monthly "Partial Payment (Unapplied) as $17,410.40 and $16,487.68, respectively. Each of these figures is many times larger than any monthly figure Plaintiffs had ever been expected to pay, and neither figure bears any resemblance to any monthly figure Plaintiffs had ever paid.

54.     On August 8, 2019, the Plaintiffs, by this time thoroughly vexed, had retained counsel and sent Nationstar a pair of letters. The first, explained *supra*, explained that they were sending Nationstar an additional $4,565.14 to address any discrepancies they might have unknowingly incurred from February through July due to Nationstar's disorganization. The second was a formal Notice of Error ("NOE") transmitted in accordance with 12 C.F.R. § 1024.35. In that letter, Plaintiffs summarized many of the errors that Nationstar had made up to that point and requested information, noting that the errors were causing them to be unfairly denied mortgage refinancing (see below).

55.     Nationstar responded to the NOE on September 3, 2019. In its response, it stated that it had committed an error: "The error was there was a delay with updating the account after the bankruptcy case was closed. The error was corrected on August 6, 2019." It stated that it had applied $5,750.73 to the account from suspense on August 6, and also applied $74.32 to late fees and $1,643.55 to principal. The response also stated that, when

COMPLAINT - 13

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE. S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

Nationstar communicated its agreement with the Notice of Final Cure that the account was current as of January 1, 2019, its internal systems actually showed it as due for November 1, 2018.

56.     On September 30, 2019, Plaintiffs submitted a complaint to the website of the federal Consumer Financial Protection Bureau ("CFPB"), which summarized a number of the problems they had had with Nationstar. In its response, dated October 14, Nationstar repeated the defenses it had offered in its NOE response, denied that it had failed to respond timely or accurately to Plaintiffs' questions, and asserted the correctness of mortgage information it had supplied to third parties.

57.     On November 14, 2019, Plaintiffs transmitted a second NOE to Nationstar, informing them of the refinance applications that were wrongfully denied due to Nationstar's incorrect reporting.

58.     On November 24, 2019, Nationstar transmitted its response to the Plaintiffs. This response was deficient in several ways, including the following:

     a.     It did not address its wrongly reported delinquencies prior to February 2019 (see below) when the mortgage payments were the responsibility of the bankruptcy trustee and were made timely but not recorded correctly by Nationstar.

     b.     It stated that although Nationstar "agree[d] with the NOFC, which stated that the loan was current and due for January 1, 2019 . . . the account was not current at that time, the account was reflecting as due for November 1, 2018." A creditor that agrees to the NOFC surrenders its right to dispute it later.

     c.     It acknowledged Nationstar's error that it supposedly corrected on August 7, 2019 but did not explain why prior months were still reported as being delinquent.

COMPLAINT - 14

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE. S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

**C.     Nationstar's Failures Repeatedly Caused Plaintiffs to be Unfairly Denied Refinancing**

59.     As a U.S. Navy veteran who fought for the United States in Vietnam, Gerald Inman is eligible for benefits via the U.S. Department of Veterans Affairs ("VA").

60.     In March of 2019, Plaintiffs applied to the VA for a loan to refinance their mortgage. As part of the process, the VA requested a Verification of Mortgage ("VOM") from Nationstar documenting Plaintiffs' mortgage history.

61.     In May of 2019, Nationstar transmitted to the VA a VOM dated May 2, 2019. It stated that Plaintiffs were delinquent on their mortgage every month from May 2018 to April 2019.

62.     This VOM was inaccurate in two ways. From May 2018 through January 2019, Plaintiffs' mortgage payment was made by the bankruptcy trustee on their behalf from Plaintiffs' bankruptcy estate. The trustee made all payments on time in accordance with Plaintiffs' confirmed plan, but Nationstar did not properly credit them to the account for unknown reasons. From February through April 2019, Plaintiffs made payments as directed by Nationstar, or as they understood the correct amount to be according to the loan agreement and Nationstar's most recent Notice of Mortgage Payment Change.

63.     In June of 2019, citing Nationstar's inaccurate reporting of Plaintiffs' payment history in the VOM, the VA denied Plaintiffs' refinancing application.

64.     Soon thereafter, knowing that their refinance application had been denied based on faulty information, Plaintiffs applied to the VA for refinancing a second time.

65.     In July, Nationstar issued a second VOM dated July 5, 2019, stating incorrectly that Plaintiffs were delinquent on their mortgage every month from July 2018 to June 2019. On August 7, 2019, the VA again denied Plaintiffs' refinancing application.

66.     In last September, after sending Nationstar their initial NOE and believing the discrepancies had been resolved, Plaintiffs applied to the VA for refinancing a third time. In their VOM dated October 1, 2019, Nationstar incorrectly stated that Plaintiffs were delinquent

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE. S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

on their mortgage every month from October 2018 to August 2019. Thereafter, the VA again denied Plaintiffs' refinancing application.

67.     In its response to Plaintiffs' CFPB complaint dated October 14, Nationstar asserted that the VOM of October 1 was correct.

68.     On November 25, 2019, one day after completing its second NOE response (which asserted that "[Nationstar] would not provide inaccurate information to prevent our customers from refinancing with another lender"), Nationstar transmitted a fourth VOM to the VA. Despite Nationstar having just acknowledged its error and claimed to have resolved it just one day earlier, the fourth VOM incorrectly stated that Plaintiffs were delinquent on their mortgage every month from November 2018 to July 2019.

69.     As a result of Nationstar's fourth incorrect VOM, the VA denied Plaintiff's refinance application a fourth time.

## V.     CAUSES OF ACTION

### A.     Count One: Breach of Contract (As to U.S. Bank and Nationstar)

70.     The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

71.     Robin Colette Inman fully performed her duties under the note and/or mortgage as modified by Chapter 13 Plan by tendering all monthly payments to the US Bank and/or Nationstar.

72.     The Plaintiffs complied with all requirements of the Chapter 13 bankruptcy case, completed the Plan and received a discharge under 11 U.S.C. § 1328.

73.     The Inman's loan was fully reinstated to its original payment schedule on the date of the Chapter 13 Discharge.

74.     The Defendants breached the March 2007 Note and Deed of Trust as modified by the confirmed Chapter 13 Plan by the following:

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE.S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

a.      ailing to credit and apply Inmans' payments as required by the provisions in the March 2007 Note and Deed of Trust that require application of payments to interest and principal before escrow and fees;

b.      assessing unauthorized late fees, legal fees, costs, & property inspection fees;

c.      failing to provide accurate repayment and reinstatement figures;

d.      failing to accurately respond to Inman's correspondence and other disputes;

e.      misrepresenting the character, extent, and amount of the Plaintiffs' debts owed to them in monthly mortgage statements sent to the Plaintiffs.

f.      failing to send accurate monthly statements and provide accurate information when the Inman's called to confirm the amount of their monthly mortgage payment.

g.      failing to accurately verify their payment history during the Chapter 13 Plan and after discharge to third parties assisting with the Inman's mortgage refinance;

h.      reporting that the Inman's were in delinquency and/or default when the Inman's paid the amount as required by their Chapter 13 Plan and Nationstar requested in their monthly statements after their bankruptcy discharge;

i.      failing to conduct their affairs in good faith.

75.    This breach subjected Plaintiffs to damages, including but not limited to compensatory damages, general damages, expectation damages, and special damages

**B.    Count Two: Breach of Good Faith and Fair Dealing (Against US Bank and Nationstar**

76.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

COMPLAINT - 17

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE. S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

77.     Defendants breached the implied duty of good faith and fair dealing present in all contracts when it refused to honor the Note and Deed of Trust as modified by the Chapter 13 Plan.

78.     Defendants had no reason to perform, since their attorneys responded for them affirmatively on December 18, 2018 with the response to notice final cure payment that the Inmans were current on all post-petition payments, consistent with 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

79.     Defendants are judicially estopped from claiming that Subject Loan was not current as of December 18, 2018 and failure to do otherwise was done in bad faith.

80.     After inquiry and further review, it appears that Defendants failed to properly apply the Plaintiffs' mortgage payments during the Chapter 13 Plan and the inability to reconcile the payment history and to provide accurate monthly mortgage statements to the Inman's after their Chapter 13 discharge is appears to be nothing more than an attempt to confuse the Inman's and prevent them from their bankruptcy fresh start.

81.     Plaintiffs are entitled to compensatory damages as a result of Defendants' conduct, including but not limited to general damages, expectation, and consequential damages.

**C.     Count Three: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (As to Nationstar)**

82.     The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

83.     Plaintiffs are "consumers" as defined by FDCPA § 1692a(3).

84.     The Subject Debt and the unauthorized fees and costs qualify as a "debts" as defined by FDCPA § 1692a(5) as they arise out of a transaction for personal, family, or household purposes.

85.     Nationstar is a "debt collector" as defined by § 1692a(6) because Nationstar regularly collect debts and uses the mail and/or the telephone to collect delinquent consumer

COMPLAINT - 18

accounts. Nationstar is a "debt collector" under the FDCPA because the Subject Loan was in default at time the Subject Loan was acquired by Nationstar.

86.   The FDCPA prohibits the use of "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d.

87.   The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e.

88.   The FDCPA prohibits the use of "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f.

89.   Defendant violated 15 U.S.C. §§1692 d, e(2), e(5), e(8), e(10), f and f(1) through its debt collection efforts.

90.   Nationstar violated 15 U.S.C. §1692d when Nationstar engaged in abusive and oppressive conduct within one year of the filing of the Complaint through (i) unethical mismanagement of the escrow account; (ii) refusal to correct their accounting errors or adequately respond to Plaintiff' repeated disputes over several years; (iii) misapplication and rejection of payments; and (iv) assessment of illegal fees.

91.   Nationstar's actions violated 15 U.S.C. §§ 1692e & f by unfairly, unconscionable, falsely and deceptively (i) misrepresenting the status of the debt; (ii) attempting to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresenting the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) assessing illegal foreclosure fees; (vi) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters; (viii) reporting false information and by reporting the loan delinquent to credit bureaus.

92.   Nationstar violated 15 U.S.C. §1692(e)(2) when it misrepresented the character, amount, or legal status of the subject debt by (i) attempting to collect illegal fees

COMPLAINT - 19

1   and costs not authorized by law or the contract; (ii) misrepresenting the amounts owed for

2   escrow; (iii) declaring the loan in delinquent or default status; (iv) assessing illegal foreclosure

3   fees; and (v) assessing escrow overdraft charges and improper corporate advances, fees, and

4   costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

5        93.    Nationstar violated 15 USC § 1692e(8) by reporting false information to a third

6   parties when it reported the Inmans' loan as delinquent to third parties

7        94.    Nationstar violated 15 U.S.C. §1692(e)(10) when it employed deceptive means

8   by (i) misrepresenting of the status of the debt; (ii) attempting to collect illegal fees and costs

9   not authorized by law or the contract; (iii) misrepresenting the amounts owed in monthly

10   statements and to third parties (iv) declaring the loan in delinquent or default status; (v)

11   assessing illegal foreclosure fees; and (vi) assessing escrow overdraft charges and improper

12   corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement

13   letters, and payoff letters.

14        95.    Nationstar violated 15 U.S.C. §1692f by employing unfair and unconscionable

15   means to collect the subject debt by (i) attempting to collect illegal fees and costs not

16   authorized by law or the contract; (ii) misrepresenting the amounts owed for escrow; (iii)

17   declaring the loan in delinquent or default status; and  (iii) assessing improper corporate

18   advances, fees, and declaring the loan to be delinquent and in default when it was current.

19        96.    Nationstar violated 15 U.S.C. §1692f (1) by attempting to collect and

20   collecting amounts (including any interest, fee, charge, or expense incidental to the principal

21   obligation) that were not expressly authorized by the agreement creating the debt (Note and/or

22   Mortgage) or permitted by law via the Chapter 13 Bankruptcy Discharge by (1)

23   misrepresenting the status of the debt; (ii) attempting to collect illegal fees and costs not

24   authorized by law or the contract; (iii) misrepresenting of the amounts owed for escrow; (iv)

25   declaring the loan delinquent or in default status; (v) assessing improper corporate advances

26   and escrow charged, fees, and costs in their monthly statements and other letters.

COMPLAINT - 20

**D.     Count Four: Violations of the Real Estate Settlement Procedures Act (As to Nationstar)**

97.     The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

98.     In January 2013, the Consumer Financial Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd- Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

99.     Specifically, on February 14, 2013, the CFPB issued the Amended Real Estate Settlement Procedures Act (Regulation X) ("RESPA"), 78 FR 10695 (Regulation X) (February 14, 2013). This Regulation became effective on January 10, 2014.

100.     Plaintiffs' mortgage loan at issue is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and is therefore subject to RESPA.

101.     U.S. Bank is subject to the Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small servicers." Neither is Nationstar a "qualified lender," as defined in 12 CFR § 617.7000.

102.     As discussed in detail above, Plaintiffs and their counsel sent multiple letters to Nationstar disputing Nationstar's application of payments from their bankruptcy case and the confusing and misleading monthly mortgage statements and information from customer service representatives at Nationstar that led the Plaintiffs to pay the wrong monthly amount on their mortgage.

103.     All letters sent by Plaintiffs and their counsel constitute Requests for Information under 12 C.F.R. § 1024.36 or Notices of Error under 12 C.F.R. § 1024.35.

104.     Nationstar failed to provide Plaintiffs with meaningful investigation and responses to each of Plaintiffs' Requests for Information and Notices of Error and further failed to provide all of the information requested in each letter, particularly with regard to Plaintiffs' requests to correct credit reporting related to their mortgage loan, to provide

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE. S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

reasons why Nationstar improperly withheld funds as unapplied, and to provide servicing notes related to Plaintiffs' loan.

105.    Nationstar's failure to respond appropriately to Plaintiffs' Requests for Information and Notices of Error violates 12 U.S.C. § 2605. Nationstar has demonstrated a pattern and practice of failing to comply with the Regulations by failing to appropriately and fully respond to Plaintiffs' Requests for Information and Notices of Error.

106.    Nationstar's actions have also negatively affected the public, including thousands of Washington residents to whom Defendants who have suffered from incorrect payment allocation and statements during and after bankruptcy.

107.    Plaintiffs have suffered actual damages, including increased costs of credit, increased interest rates and payments to Nationstar in the form of mortgage payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Nationstar's willful violations of RESPA.

108.    Accordingly, Nationstar is liable to Plaintiffs for actual damages, costs, attorneys' fees, and statutory damages of at least $2,000.00 per violation, pursuant to 12 U.S.C. § 2605.

**E.    Count Five: Violations of the Trust in Lending Act (As to Nationstar)**

109.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

110.    The Truth in Lending Act ("TILA") requires that, "in connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency…." 15 U.S.C. § 1639f(a) (emphasis added). Further, Regulation Z expands on the servicer's requirements in applying periodic mortgage

COMPLAINT - 22

payments, which it defines as "an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle." 12 C.F.R. § 1026.36(c)(1)(i).

111.    Nationstar failed to timely and/or properly credit at payments made on the loan by the Plaintiffs, all which were more than sufficient to cover the Plaintiffs' contractually due amounts each month, including principal, interest, and escrow.

112.    Nationstar's failure to timely and/or properly credit Plaintiffs' mortgage payments violate 15 U.S.C. § 1639f and 12 C.F.R. § 1026.36(c)(1).

113.    Nationstar's failure to timely apply payments received to principal, interest, and escrow wrongfully placed the Plaintiffs in a "default" status and therefore in peril of losing their home or rights under the VA loan program.

114.    Plaintiffs have suffered actual damages, including increased costs of credit, increased interest rates and payments to Nationstar in the form of high mortgage payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Nationstar's willful violations of TILA.

115.    Accordingly, Nationstar is liable to Plaintiffs for their actual damages, costs attorneys' fees and statutory damages of at least $4000 for each violation of TILA. 15 U.S.C. § 1640(a).

**F.    Count Six: Negligent Misrepresentation (As to Nationstar and U.S. Bank)**

116.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

117.    Under the circumstances alleged, Defendants owed Plaintiffs a duty to provide them with accurate information regarding the Subject Loan process and to comply with the representations made by Defendants in their response to  to the Bankruptcy court that the Plaintiffs were current prior to plan completion and discharge.

118.    Defendants negligently represented to Plaintiffs that upon completion of their Chapter 13 Plan, their mortgage would be current and fully reinstated. Defendants'

COMPLAINT - 23

Henry & DeGraaff, P.S.
787 Maynard Ave. S
Seattle, Washington  98104
telephone (206) 330-0595
fax (206) 400-7609

representation was negligent because they subsequently failed to comply with their representations by refusing to reconcile the Subject Loan with completion of the Chapter 13 Plan and failed to provide accurate information to the Plaintiffs and third parties about their Subject Loan.

119.    Supplying such obviously false information demonstrates a lack of exercise of reasonable care or competence in communicating with Plaintiffs and third parties.

120.    Plaintiffs justifiably relied on Defendants' misrepresentations, expecting to receive accurate information about the payments on their Subject Loan so that they could stay current after their bankruptcy and refinance into a new loan with lower interest.

121.    Plaintiffs have suffered significant damages because of Defendants' negligent misrepresentation that induced them to applying for a loan refinance to lower their monthly mortgage payments and that they relied on the Defendants statements to the bankruptcy court that they were current on their Subject Mortgage.

122.    The Plaintiffs are entitled to compensatory damages, and attorney's fees and costs expended in reliance upon Defendants' negligent misrepresentations.

### G.    Count Seven: Violations of the Washington State Consumer Protection Act (As to Nationstar and U.S. Bank)

123.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

124.    The defendants have violated the Washington Consumer Protection Act ("CPA") as to each of the five elements: they have committed one or more (1) unfair or deceptive act or practice; (2) in trade or commerce; (3) that has an impact on the public interest; (4) resulted in injury in the Plaintiffs' in their business or property; and (5) the injury and damages suffered were proximately caused by the defendants.

125.    Nationstar engaged in unfair and deceptive acts and practices in violation of the Washington Consumer Protection Act, Wash. Rev. Code 19.86.020, including but not limited to:

COMPLAINT - 24

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

      a.      failing to credit and apply Inmans' payments as required by the provisions in the March 2007 Note and Deed of Trust that require application of payments to interest and principal before escrow and fees;

      b.      assessing unauthorized late fees, legal fees, costs, & property inspection fees;

      c.      failing to provide accurate repayment and reinstatement figures;

      d.      failing to accurately respond to Inman's correspondence and other disputes;

      e.      misrepresenting the character, extent, and amount of the Plaintiffs' debts owed to them in monthly mortgage statements sent to the Plaintiffs.

      f.      failing to send accurate monthly statements and provide accurate information when the Inman's called to confirm the amount of their monthly mortgage payment.

      g.      failing to accurately verify their payment history during the Chapter 13 Plan and after discharge to third parties assisting with the Inman's mortgage refinance;

      h.      reporting that the Inman's were in delinquency and/or default when the Inman's paid the amount as required by their Chapter 13 Plan and Nationstar requested in their monthly statements after their bankruptcy discharge;

      i.      failing to conduct their affairs in good faith.

126.    Nationstar's deceptive acts or practices have occurred in its trade or business and can deceive a substantial portion of the public since Nationstar's actions, subsequent correspondences, and responses to third parties, all came in form letters that do not appear particularized to Plaintiffs.

127.    Additionally, Defendants were in a superior informational position in that the standards for application of payments and reconciliation of Chapter 13 Plan payments are likely to be unknown to the borrowers whose loans Nationstar services.

COMPLAINT - 25

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

128.    As such, Defendants' general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

129.    As a direct and proximate result of Defendants' unfair acts or practices, Plaintiffs suffered injury. Plaintiffs expended time, money, and other resources in furtherance of a refinance that they could not complete, causing damage to their reputations, their business and property.

130.    Plaintiffs are therefore entitled to an order enjoining the conduct complained of herein; actual damages; treble damages pursuant to Wash. Rev. Code 19.86.090; costs of suit, including a reasonable attorney's fee; and such further relief as the Court may deem proper.

131.    Plaintiffs are also entitled to exemplary damages because Defendants acted in bad faith in deliberate or reckless disregard of his rights and their obligations to promptly post payments made in bankruptcy, failing to reconcile their internal accounts with the bankruptcy court, and reporting incorrect and inaccurate information about the Plaintiffs to third parties.

132.    The actions of Defendants as alleged herein constitute violations of the Washington Consumer Protection Act, and: (1) have occurred in trade or commerce; (2) are deceptive as alleged above; (3) negatively affect the public, including thousands of Washington residents to whom Defendants who have suffered from incorrect payment allocation and statements during and after bankruptcy; and (4) causing injuries to Plaintiff as alleged above.

133.    Such conduct should be enjoined as authorized by RCW 19.86.

**H.    Count Eight: Consumer Loan Act Violation- Per Se Consumer Protection Act Violation (As to Nationstar)**

134.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

135.    Pursuant to RCW 31.04.208 of the WCLA, "the legislature finds that the practices governed by this chapter are matters vitally affecting the public interest for the

COMPLAINT - 26

purpose of applying the consumer protection act, chapter 19.86 RCW. Any violation of this chapter is not reasonable in relation to the development and preservation of business and is an unfair and deceptive act or practice and unfair method of competition in the conduct of trade or commerce in violation of RCW 19.86.020. Remedies provided by chapter 19.86 RCW are cumulative and not exclusive."

136.     Pursuant to the WCLA, "[i]t is a violation of this chapter for a licensee, its officers, directors, employees, or independent contractors, or any other person subject to this chapter to . . . [d]irectly or indirectly engage in any unfair or deceptive practice toward any person." RCW 31.04.027(2). Defendant Nationstar engaged, directly or indirectly, in an unfair or deceptive practice by providing Plaintiff with inconsistent or erroneous documentation and information, including but not limited to escrow balances and the status of the mortgage account.

137.     As a result, Defendant Nationstar violated the WCLA.

138.     Plaintiff incurred attorney's fees because of Defendant Nationstar.

139.     Defendant Nationstar's actions are a direct and proximate cause of Plaintiffs injuries.

140.     Defendant Nationstar's actions were intentional, willful, wanton, unfair, unconscionable, and/or outrageous.

141.     Defendant Nationstar's actions illustrate why an injunction is necessary to protect Plaintiffs and other Washington debtors/consumers from similar harm.

**I.     Count Eight: Injunctive Relief**

142.     The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

143.     A party may seek injunctive relief for violations of the Consumer Protection Act. RCW 19.86.090.

COMPLAINT - 27

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE. S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

144.     Plaintiffs seek injunctive relief from this Court which would enjoin the Defendants from collecting mortgage debts in the manner described above from Plaintiffs and from any other person similarly situated.

145.     The Plaintiffs seek an injunction that broadly bars the Defendants from engaging in certain mortgage debt collection practices against any debt, as opposed to barring those practices strictly with respect to them alone. *See, e.g.*, *State v.* Kaiser, 161 Wn. App. 705 (2011) (Upholding injunction that prohibited company from entering into certain agreement with any property owner); *Klem v. Washington Mut. Bank*, 176 Wash. 2d 771, 796, 295 P.3d 1179, 1192 (2013) (Injunction requiring company to follow Washington law not "overly broad and unenforceable" where company "demonstrated little understanding or regard for Washington law.").

146.     Specifically, Plaintiffs seek an injunction prohibiting the Defendants from their unlawful collection tactics, including but not limited to failing to apply chapter 13 plan promptly, mispresenting the payment history of borrowers who have completed a chapter 13 bankruptcy plan to third parties, providing inaccurate and misleading information to borrowers regarding the amount owed on their mortgage and the amount of their monthly mortgage payment, and telling borrowers that they are delinquent or in default when they have made every payment requested.

147.     Plaintiffs have reason to believe these actions make up a pattern and practice of behavior and have impacted other individuals similarly situated.

148.     Injunctive relief is necessary to prevent further injury to Plaintiffs and to the Washington public as a whole.

149.     Injunctive relief should therefore issue as described herein.

## VI.     <u>Demand for a Jury Trial</u>

150.     Plaintiffs assert their right under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Fed. R. Civ. P. 38, a jury trial on their claims

COMPLAINT - 28

**Henry & DeGraaff, P.S.**
787 Maynard Ave. S
Seattle, Washington  98104
telephone (206) 330-0595
fax (206) 400-7609

1  against Defendants for violation of the Fair Debt Collection Practices Act, RESPA, TILA, the

2  Washington State Consumer Protection Act, and state law claims.

3  ### VII.   PRAYER FOR RELIEF & DAMAGES

4      WHEREFORE, Plaintiffs respectfully prays that judgment be entered against all the

5  Defendants for the following:

6      151.   For compensatory damages, including but not limited to general damages,

7  expectation and consequential damages in an amount to be determined at trial;

8      152.   For statutory damage of $1,000 for FDCPA violations;

9      153.   For actual damages including emotional distress pursuant to 15 U.S.C. §

10  1692k(a)(1);

11      154.   Actual damages, including damages to reputation, property and business in an

12  amount to be determined at trial and treble damages up to $25,000 for each violation of the

13  Consumer Protection Act, plus attorney fees and costs under RCW 19.86.090;

14      155.   Damages including emotional distress, for the conduct of alleged in an amount

15  to be fully proven at the time of trial;

16      156.   For injunctive relief pursuant to RCW 19.86.090 as described above.

17      157.   For costs and reasonable attorney's fees as determined by the Court pursuant to

18  15 U.S.C. § 1692k(a)(3) and RCW 19.86 *et seq*;

19      158.   For attorney's fees and costs incurred to enforce provisions of the August 2017

20  contract, as the prevailing party under RCW 4.84.330;

21      159.   For costs as the prevailing party under RCW 4.84.010;

22      160.   For such other relief as the Court deems equitable and just.

23

24

25

26

COMPLAINT - 29

1

2      Respectfully Submitted this 5th of May 2020.

3

4

5                          BARRAZA LAW, PLLC

6                          */s/ V. Omar Barraza*
                           V. Omar Barraza, WSBA #43589
7                          10728 16th Avenue SW
                           Seattle, WA 98146
8                          omar@barrazalaw.com
9                          Tel.: (206) 933-7861 / Fax.: (206) 933-7863

10                         HENRY & DEGRAAFF, PS

11
                           */s/ Christina L. Henry*
12                         Christina L. Henry, WSBA #31272
                           787 Maynard Avenue South
13                         Seattle, Washington 98104
                           chenry@hdm-legal.com
14                         Tel.: (206) 330-0595  / Fax: (206) 400-7609

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 30